The first case is United States v. Baker and we're ready to proceed. Thank you. May it please the court. David Pallotto on behalf of the defendant, Appellant Ernest Baker. I also represented Mr. Baker below. I'd like to focus my limited time today on the grand jury issue and then move on to the other issue raised on appeal time permitting. Everything is connected, however, and cannot be viewed in a vacuum. The issues, the prosecutorial misconduct before the grand jury, the speedy trial violations, the improper cell phone search extension, and the insufficient proof at trials are all related. They're all connected. With regard to the grand jury, your honors, this case involves the integrity of the grand jury process. The to the grand jury that resulted in the first and the second indictment. The grand jury's function, of course, is to assess probable cause fairly and independently without undue influence or misleading guidance from the process. I couldn't find in your briefing how you were identifying how the grand jury, I mean, assuming that this is a viable claim after a jury verdict at trial, in what way was there testimony in the grand jury that was false? Judge, over and over, and I was pleased that the court requested the grand jury minutes. I was very cognizant of, you know, restrictions in the privacy. You had, and just so I'm understanding what happened below, you had access to the full grand jury transcript or your client did before trial? I don't know that I had full access to the full transcript. What happened, your honors, shortly before the trial, prior to receiving the other janks materials, I was provided grand jury minutes from the prosecutor for the limited purpose of trying to facilitate a plea. He egos to me and stated, you know, you can use these, you can discuss with your client to try to facilitate a plea. I wasn't permitted, certainly I didn't think I was permitted, to include all of those items in the transcripts for a subsequent motion. I made the motion, both motions, before I had the grand jury minutes and it seemed glaringly obvious just from looking at the 171 page affidavit that something did not jive. So, just so I'm understanding, you did not have grand jury minutes. You made a motion saying that you wanted them and sometime after that, you were provided access to the jinx act materials and possibly some other materials that went beyond that. Correct, Judge. I received Agent Smith's testimony as well as Agent Mahaffey's testimony before the grand jury. I believe there were five separate dates that they testified. And they at trial. They testified at trial. So that would be jinx act material. It would be. So I did receive that, I suppose, a little bit early. What happened over and over and over again, and I know your honors now have those grand jury transcripts, is the agent and the prosecutor were essentially saying that Philip Flowers was Ernest Baker's courier. He was his drug runner. He held the drugs and the guns at his home on behalf of Mr. Baker. Repeatedly, over and over, they discussed with the grand jury that Mr. Baker was on supervised release, state parole, as well as federal parole. Essentially, they were tainting that grand jury and just conclusory testimony saying over and over that Flowers did all this running for Mr. Baker. There was no proof. There was no evidence that they had. It was simply guesses or, you know, suppositions made by the agent, by the prosecutor. Well, you're aware that most infirmities in a grand jury presentation are become a matter that the law doesn't concern itself with after a verdict at trial, right? I understand. So how are you taking yourself out of that, you know, precedence? Judge, what happened, it was fleshed out at trial. I mean, the fact that they were trying to connect Ernest Baker to 33 Locust Street, that was borne out at trial. Those three counts in the indictment were all, Mr. Baker was found not guilty of all three of those counts. But they tainted the well of the grand jury presentation to get the conspiracy charge. Those controlled buys, they tried to, you know, insinuate that those buys and Mr. Flowers had something to do with the bigger conspiracy, first of all, and also with the objects and evidence that was seized from 33 Locust Street. They simply did not have the evidence. What the government did, and that's why all of these issues that I've raised on appeals touch upon one another, is they bought time. They provided false information to the grand jury indicating that Mr. Flowers was somehow Mr. Baker's drug runner. They secured the indictment. Then when the case was severed, they got another indictment. They held back those two controlled buys, notwithstanding the fact that they knew about it. They included it in the 171 page affidavit. They waited. They needed more time. What they were trying to do is see if they could somehow get the evidence that they wanted against Mr. Baker. And that's exactly what they did when they put together that joint plea proposal. They got Figueroa, they got De Leon, and I suppose they had Gonzalez-Rivera as well, although he was not a cooperator. He didn't testify at trial. But they bought time. Figueroa told the prosecutor that she had never sold drugs to Ernest Baker. That was part of those proper sessions with the government. And essentially what happened is the government said, unless you say that Baker sold you drugs, then you were not getting the benefit of the bargain. You're going away for a long time. So finally at trial, she flips. She changes her position, and now all of a sudden there's the Walmart buy, there's the other buys. But they didn't have that. They didn't have any direct evidence. They didn't even have any indirect evidence. There was no evidence whatsoever at the time of those grand jury presentations that Mr. Baker utilized Philip Flowers for drug running or for storing drugs and guns at the so-called principal's stash location. And the fact that they provided this conclusory opinion over and over that was unsupported by the evidence, well, the grand jury said, okay, fine, we'll indict him. But that was not true. Can I ask you to address one of your claims is that the government's motion for an extension of time to search the seized cell phones should not have been granted. As I understand the record, two of the cell phones were your clients, but only two of them. And the government never got access to those phones, so no evidence from those phones was introduced at trial. So I'm having difficulty seeing, to the extent that this is a Fourth Amendment claim, how your clients' Fourth Amendment rights were implicated by the search of other people's cell phones. Well, Judge, that's correct. The two phones that were found at 20 Heidelberg where Mr. Baker lived, they were ultimately not searched. But they did find phones at two of the other locations. And what they did at trial is they presented evidence. Allegedly, Mr. Baker owned one of the phones that was found at Locust Street. So ultimately, that became his phone through the testimony of a so-called expert, who I would submit was not much of an expert at all. But what they did at trial was they said this phone belonged to Ernest Baker, and he was relaying messages back and forth with others involved in the conspiracy. The cell phone evidence became instrumental at the time of trial, and those phones, quite frankly, all of the phones should not have been searched. In the four corners of that document, it said you had 60 days. And they didn't search them within 60 days. They tried to search them within 60 days. All of the excuses that were given way after the fact, some nine months, 10 months after the fact, were, well, because of COVID, there were delays. Well, we don't know that there were any delays. We don't know if those phones were ever submitted. And then the second excuse was, okay, well, we had to narrow it down so that there wasn't so much of a burden on the forensic lab doing the evaluation. What happened is the four corners of the document said you have 60 days to search. That 60 days came and went. No new cause was given. And then, finally, months and months later, they go ahead and they search the phones that they did seize that they were able to get into. One of them they put directly in Mr. Baker's hands. So we'll hear from the government. Monica Richards May it please the Court. Monica Richards on behalf of the United States of America. To address the challenge versus the grand jury proceedings here, I still didn't hear any answer to the court's question. And I've tried to find it in the record. But anything that demonstrated that there was any part, any bit of prosecutorial misconduct or suborning perjury before the grand jury proceedings, I believe the Court well noted that the controlled bias, if you just look at the complaint, the complaint shows that we did have evidence of a confidential source who said Baker told me he could get cocaine and heroin, that he knows, that Baker knows one of the other co-conspirators who's identified in the record throughout as a co-conspirator, Latif Budd, that he's a large-scale drug trafficker. That was a testimony from the CS that was available at the time of the complaint. And then we had surveillance already in place at 4th Floor X-Street, which was sort of the main hub here. And at 4th Floor X-Street, we had surveillance, and that's detailed in the criminal complaint. Those records I could run through, but there was plenty of surveillance of Baker and Flowers, both present at 4th Floor X-Street in early 2020, beginning in January, then again February 19th, 2020, February 24th, 2020, we had Mr. Baker at 4th Floor X-Street, Baker and Flowers again a month later, March 24th, and then March 27th, we had Baker again at 4th Floor X-Street, and then April 3rd, we had Flowers and Baker both at 4th Floor X-Street. Interestingly, and the point was, each time when Flowers was seen at 4th Floor X-Street, he would then go directly to 33 Locust Street. So that was the connection linking to the extent there's a concern with regard to that on the court's part. We did have the two controlled buys, one of which involved Mr. Flowers, the other one was just Mr. Baker, but then we also had the surveillance that was already in place. With regard to the identification by the CI, in case that's something that creeps up during the court's deliberations on this, the identification of the CI, the CI couldn't identify Flowers, but it really, in the end, was a wash because we had all the surveillance, and the people who were surveilling him identified his address, himself, the person himself, his car, his car that switched to plate. They had a lot of information about Mr. Flowers, regardless of the fact that the CI couldn't personally identify him. Is there a, on the question of how much of the grand jury transcript was made available, is there anything in the record that reflects that? I mean, was the defendant provided with JCSAC material, or was he provided before trial with the grand jury transcript in its entirety? I'd agree with what my attorney said, what my, excuse me, my colleague said, that it was the five transcripts. It was the four transcripts for Officer Smith and the one for Officer Mahaffey. Those occurred on five different dates, so there were five different sets of transcripts. That's my knowledge, is that those five were provided, and I concur that it was with regard to an effort to negotiate the plea, but eventually, then, of course, that was already subject to the, by the time we get to trial, that's already subject to the Jinx order. Okay, so there was, so everything that was provided during plea negotiations was material that would be provided under the Jinx Act? Correct. Could you address the cell phone record issue? I mean, there were multiple cell phones. My read of the record is that there was a motion made to extend the time, but everything was finished within the broader period for the adjudication of pre-trial motions, so the trial wasn't delayed in any way because of the searching of the cell phone records. Am I right about that? Yes, Your Honor. There was extensive motion practice here, and I tried to identify that in my brief. I appreciate the court taking note of it, but yes, there were multiple motions. Even down, even right after we filed the motion to file a ready date for trial, there were more motions for discovery filed by the defense. So here, we didn't have any time that was accountable to the cell phone record, I'm sorry, to the cell phone search, and ultimately, I just would like to clarify one thing that was said was that the phones that were found at 33 Locust Street, there was consent for those two phones, and I tried quickly to find the date that that report was provided to the defense. I don't have the exact date, but I know it was in advance of the earlier. Do you know who provided the consent for the phone that Mr. Pallotto said was then attributed to Mr. Baker? Mr. Flowers. It was at his, it was found at his house. And that's where he, that was his house? Yes, and then he was also used the phone, it seemed, and the evidence of trials, I recall, was that there were pictures of Mr. Baker on the phone, and that's how they And what do you say to Mr. Pallotto's argument that this delay was never, I know it wasn't, it was around COVID and everything was shut down, but that the delay in the request for an extension of time to search didn't happen until several months after the 60-day period that was provided? Yeah, I don't disagree just on the timeline, I certainly don't disagree with the timeline of it, but I know the court did address it, court took a look at it, the claim, you know, was made timely, that the claim was made that these things needed to be searched faster, better, and that's when all the litigation started with regards to whether or not that was appropriate, but from the get-go, the district court had said, hey, you know, these things happen, it's very important, we're here at an unprecedented time, the lab was short-staffed, there was a huge backup of phones to be searched, and the court found that there was no ill will or no, on that date, I don't want to get to that date, but there was no, on the part of the government, that it was not something that they would be held in Rule 16 style accountable for. And if I could just ask you briefly about this speedy trial issue, I know Mr. Plato hasn't addressed it today, but it's in his brief as the first issue, and I wanted to be clear about when someone first asked for a trial date. Am I right that the first request for a specific trial date was in January 2022 and it was the that requested a trial date which was then set for May? Correct. And before that, there were various exclusions of time under the Speedy Trial Act that were on consent, is that right? Yeah, there was never an objection to those. Okay. There was a moment in time when Mr. Baker himself stood up and spoke and thought, you know, as to his perceived unfairness in the timing of the second indictment followed Mr. Baker's motion for severance. So that really wasn't something you could blame the government, you know, makes it seem as if we held something back or that we waited, but those two controlled buys that went into the second indictment, those were in fact, as was noted, mentioned and brought up during the complaint, there was nothing about that. There was some sort of sabotaging or trying to restart a clock on which no time had even brought up. And the two controlled buys were part of the first indictment or were they not? They were in the first, they were in the criminal complaint and I believe, yes, that they were in the first indictment, but no, they were not. Sorry, they weren't separate substantive counts. Sorry, I just remembered. They were not substantive counts. They were part, they were noted as part of the conspiracy in the complaint. I can't tell you for sure. They were not separately charged. Yes. Okay. I think I'm less than ready for the questions addressed in my brief. Thank you. Your honors, I do wish to, to the extent I did not answer your honor's question, I want to answer your question. Before I do so, however, I want to dispute that the phones that 33 Locust were given on consent. I submit that they were not. The only person who would have been in a position to testify as to whether or not there was consent given, other than Mr. Flowers, would have been Special Agent Sullivan. They didn't call Special Agent Sullivan. He was the seizing agent at 33 Locust Street. And the reason they didn't call him, as I put in my papers, is because he was charged with serious misconduct and deliberately not called as a witness. There were prescription pill bottles found in his drawer. Suspected fentanyl found in his drawer. There was full camera footage from another investigation found in his drawer. There was an evidence bag that becomes part of administrative evidence that should have been put into evidence that was also found in his drawer. So I don't think there was a consent. But to be clear, that's not a matter for trial. Was that the subject of a motion to suppress before trial? It was, it was not. Well, it would have been a subject to trial. I would have thought it would have been a necessary witness in order to prove those 33 Locust Street counts. He wasn't called purposely. Mr. Baker was acquitted of those counts. But as to the admissibility of the cell phones, supposedly based on consent, was... Well, he was the one that purportedly obtained the consent. There was an issue with that form as well. But did you move to suppress that evidence? Judge, I moved to suppress the phones at Mr. Baker's home. I joined all of the other defendants' motions to suppress all of the phones. I was very broad in my language. If I had any authority to move to suppress any phones, I would have done it. I didn't know, I suppose early on, that they were going to attribute one of the phones that was found at Locust Street to Mr. Baker. Perhaps I would have made a motion sooner in that regard. But to answer Your Honor's question on what actually took place at the grand jury, the court has requested the minutes. And this is over and over and over again. Question. And that is consistent with the fact that Ernest Baker was having Philip Flowers hold the drugs and other items for him. Answer. That is correct. Question. Now, I don't know if you mentioned this to the grand jury previously, but Ernest Baker is currently on supervised release from a federal drug conviction. Is that correct? Answer. That is correct. It goes on and on. Is this Agent Smith you're quoting? Agent Smith. Okay. Excuse me. I'm sorry. To the extent there's going to be more reading from the seal of testimony, I just, I don't understand. I'm sorry. Mr. Filato, we have the transcripts. I would answer your question more generally with what I put in my papers, but ask Your Honors to please read carefully through those grand jury transcripts. It was the prosecutor testifying through the agents. It was all conclusory allegations, unsupported by proof, and that's why the grand jury process was heeded from the beginning. Thank you. Thank you both, and we will take the matter under advisement.